IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:12-CV-131-FL

| | |
|---|---|
| AL W. LUCAS, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-20, DE-24] pursuant to Fed. R. Civ. P. 12(c). Claimant Al Lucas ("Claimant") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of his applications for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this court recommends denying Claimant's Motion for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings and upholding the final decision of the Commissioner.

### STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on July 15, 2008, alleging disability beginning October 15, 2002. (R. 17). His claim was denied initially and upon reconsideration. (R. 17). A hearing before the Administrative Law Judge ("ALJ") was held on June 22, 2010, at which Claimant was represented by counsel and a vocational expert appeared and testified. (R. 17). At the hearing, Claimant amended his alleged onset date to June 20, 2006. (R.

17, 173). On July 16, 2010, the ALJ issued a decision denying Claimant's request for benefits. (R. 17-26). Claimant then requested a review of the ALJ's decision by the Appeals Council (R. 13), and submitted additional evidence as part of his request. (R. 5, 409-410). After incorporating the additional evidence and upon review of the entire record, the Appeals Council denied Claimant's request for review on February 10, 2012. (R. 1-5). Claimant then filed a complaint in this court seeking review of the now final administrative decision. [DE-1].

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in

2

crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

In this case, Claimant alleges the following errors by the ALJ: (1) improper evaluation of the treating physician's opinion; (2) improper assessment of Claimant's residual functional capacity ("RFC"); and (3) failure to acknowledge the Department of Veterans Affairs ("VA") decision

3

awarding Claimant a disability rating of 70 percent. Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings ("Pl.'s Mem.") at 8, 13, 15.

## FACTUAL HISTORY

### I. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 19). Next, the ALJ determined Claimant had the following severe impairments: post traumatic stress disorder ("PTSD"), history of prostate cancer, obstructive sleep apnea, and fibromyalgia. *Id.* The ALJ also found Claimant had nonsevere impairments of hypertension, GERD, and kidney disease. (R. 20). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild restriction of daily living activities, moderate difficulties in social functioning and in concentration, persistence or pace, and no episodes of decompensation. (R. 20).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform medium work[1] with no more than occasional balancing and climbing, no climbing on ladders, ropes, or scaffolds, no more than frequent stooping, crouching, kneeling or crawling, no work at heights or around dangerous equipment, and is limited to performing simple, routine, repetitive tasks. (R. 21). The ALJ's RFC determination also noted that Claimant cannot have more

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds. If someone can do medium work, he can also do sedentary and light work. 20 C.F.R. § 404.1567(c).

4

than occasional interaction with co-workers and supervisors and cannot have contact with the public. (R. 21). In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 23). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work as a sheet metal installer. (R. 24). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 25).

## II. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 61 years old and unemployed. (R. 35, 36). Claimant is a high school graduate and was last employed with his wife's sheet metal business for approximately 20 years, where his duties included sheet metal installation. (R. 36, 37, 44). Claimant's past work experience also includes working for other sheet metal companies. (R. 37). Claimant served in combat in Vietnam between 1969 and 1970. (R. 36).

Claimant explained numerous medical conditions support his disability claim and his inability to work full-time. These medical conditions include arthritis in his right shoulder, urinary problems resulting from prostate cancer radiation, chronic kidney disease, fecal incontinence, sleep apnea, PTSD, depression, and foot problems. (R. 37, 38, 39, 40). Claimant testified he cannot raise his right arm or pick up anything with his arm, but that surgery has not been recommended. (R. 37). Claimant testified he was diagnosed with prostate cancer in 2004 and following diagnosis, underwent radiation treatments for the prostate cancer which is currently in remission. (R. 38). Claimant testified he suffers from frequent urination and fecal incontinence as a result of radiation. (R. 38). Claimant testified that he uses the restroom 20 to 30 times per day and wears an adult diaper

5

when he leaves his home because he experiences sudden and urgent urination episodes. (R. 38). Claimant also testified that he has chronic kidney disease which also causes frequent urination and pain. (R. 39). Claimant testified that his reflux causes pain and prevents him from sleeping. (R. 39). Claimant testified he is on medication, but the reflux still causes pain. (R. 39). Claimant testified he gets approximately three hours of sleep per night and he does not like to wear his CPAP machine at night because it makes him claustrophobic. (R. 39). Claimant testified he has "jungle rot" in his feet as a result of his service in Vietnam, and that he experiences heat and burning in his feet making it difficult for him to walk and sit. (R. 40).

Claimant testified he was diagnosed with PTSD in 2004, but that he unknowingly had the disease years before while being treated for depression. (R. 40). Claimant testified he has nightmares and flashbacks to Vietnam which wakes him up during the night. (R. 40). Claimant testified his physical problems are made worse by stress. (R. 40). Claimant also testified he has memory and concentration problems and is unable to read. (R. 41). Claimant testified he is paranoid, cries easily and has frequent suicidal thoughts, but that he does not act on his suicidal thoughts because of his religious beliefs. (R. 41, 42). Claimant testified that he avoids interaction with people. (R. 42). Claimant testified that his sleeping and depression medications make him drowsy and dizzy and he often takes two naps during the day. (R. 42). Claimant testified that he attends group therapy meetings once a week. (R. 43, 44).

Claimant testified he is unable to sit or walk for more than 15 minutes and that he occasionally goes outside in the backyard with his dog, but otherwise watches TV during the day. (R. 43). Claimant testified he goes to the grocery store and vacuums for a few minutes, but that his daughter otherwise assists him with housekeeping. (R. 43). Finally, Claimant testified that he is no

longer able to ride horses, water ski, fish, boat or hunt. (R. 43).

## III. Vocational Expert's Testimony at the Administrative Hearing

Paula Day testified as a VE at the administrative hearing. (R. 46-48). After the VE's testimony regarding Claimant's past work experience (R. 46), the ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant and posed two hypothetical questions. First, the ALJ asked whether the individual could perform Claimant's past relevant work assuming the individual has the physical capacity to perform medium work with nonexertional limitations that include occasional balancing and climbing, frequent stooping, crouching, kneeling and crawling, no work at heights or around dangerous machinery and performance of only simple routine repetitive tasks with no co-worker contact and no contact with the public. (R. 47). The VE responded in the negative. (R. 47). The VE testified further that jobs existed in the national and regional economies which the hypothetical individual could perform, including the following: (1) hand packager (DOT #902.587-018) and (2) kitchen helper (DOT #318.687-010). (R. 47, 48). Second, the ALJ asked whether the hypothetical individual could perform the listed jobs if he required use of the restroom 20 times per day. (R. 48). The VE responded in the negative. (R. 48).

## DISCUSSION

### I. The ALJ did not err in evaluating the opinion of Claimant's treating physician.

Claimant contends the ALJ did not provide good reasons for rejecting the opinion of Dr. Kirchmann, a treating psychiatrist, and that the ALJ's reasons are not supported by substantial evidence. Pl.'s Mem. at 14. Specifically, Claimant contends the ALJ did not comply with the requirements of Social Security Ruling ("SSR") 96-2p. *Id.* at 13. This court disagrees.

7

The ALJ must generally give more weight to the opinion of a treating physician because that doctor is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. 20 C.F.R. § 404.1527(c)(2). However, though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig*, 76 F.3d at 590. In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id.*; *see also Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (stating "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence"); *Mastro*, 270 F.3d at 178 (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence") (citation omitted); *Wireman v. Barnhart*, No. 2:05-CV-46, 2006 U.S. Dist. LEXIS 62868, at *23, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006) (stating an ALJ "may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source . . . if he sufficiently explains his rationale and if the record supports his findings"); 20 C.F.R. § 404.1527(c)(3).

When the ALJ does not give the opinion of a treating physician controlling weight, the ALJ must weigh the opinion pursuant to the following non-exclusive list: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship between the physician and the claimant; (3) the supportability of the physician's opinion; (4) the consistency of the opinion with the record; and (5) whether the physician is a specialist. 20 C.F.R. § 404.1527(c)(2)-(6); *see also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005). Moreover, the ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by substantial evidence in the case record, and must be sufficiently

8

specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." S.S.R. 96-2p, 1996 SSR LEXIS 9, at *12, 1996 WL 374188, at *5.

The medical opinion that appears to be at issue is the opinion that appeared initially in Dr. Kirchmann's May 27, 2010 letter and was subsequently reiterated in his July 12, 2011 letter. (R. 408, 409). In these two letters, Dr. Kirchmann stated his recommendation that "[Claimant] not work as his symptoms would interfere and would also predictably be exacerbated" and his opinion that "[Claimant] is totally and permanently disabled due to his PTSD." (R. 408, 409). While the regulations provide that medical source opinions on such disability issues are considered by the Social Security Administration ("SSA"), the regulations also explicitly provide that "the final responsibility for deciding these issues is reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(2); S.S.R. 96-5p, 1996 SSR LEXIS 2, at *5, 1996 WL 374183, at *2. In his decision, the ALJ implicitly acknowledged the length, frequency, nature, and extent of Claimant's relationship with Dr. Kirchmann via reference to his treatment notes. (R. 203, 204, 205). Particularly, the ALJ noted that Claimant's visit in April 2008 was the first visit since December 2006, indicating irregular treatment. (R. 22, 203). The ALJ indicated that at Claimant's April 2008 visit, Claimant had run out of his medication and Dr. Kirchmann simultaneously indicated that Claimant's symptoms were fairly controlled through medication. (R. 22, 203, 205). The ALJ further noted that Claimant had no psychomotor agitation, no delusions, and had logical and linear thoughts. (R. 22, 204). Subsequent reports dated August 2008, January 2009, and June 2009 indicate the same observation. (R. 290, 359, 372). Dr. Kirchmann's May 2010 opinion was noted in great detail in the ALJ's decision. The ALJ essentially recapped the entire letter describing Dr. Kirchmann's treatment record

9

along with Claimant's symptoms and medical treatment for PTSD.[2] (R. 22, 408). The ALJ specifically mentioned Claimant's symptoms of nightmares, flashbacks, increased irritability, exaggerated startle responses, avoidance symptoms, hypervigilance, low mood, anhedonia, low energy, and poor concentration. (R. 22, 408, 409). However, the ALJ accorded little weight to Dr. Kirchmann's May 2010 opinion because the statement of disability was not supported by the course of treatment pursued by Dr. Kirchmann in regard to Claimant. (R. 24); *see* 20 C.F.R. § 404.1527(d)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."). The ALJ noted, in regard to all of Claimant's alleged symptoms and limitations, that Claimant has received conservative and routine treatment which suggests Claimant is not disabled. (R. 23). Claimant's treatment regimen includes infrequent appointments with Dr. Kirchmann, medication, and group therapy sessions. (R. 22, 185-190). Additionally, the ALJ noted that Claimant has not been entirely compliant in following prescribed treatment, and as previously mentioned, the Claimant did in fact lapse in his prescribed PTSD medication. (R. 23). Moreover, the ALJ found Claimant's testimony established he was able to do errands like go to the grocery and engage in other activities, which indicate he is "not limited to the extent one would expect." (R. 23, 43). The ALJ further acknowledged that statements as to whether a claimant is disabled are not entitled to controlling weight. (R. 24).

The ALJ properly concluded that treatment notes and the prescribed course of treatment

---

[2] Dr. Kirchmann's letter dated June 2011 contained identical statements as the May 2010 letter with the addition of Claimant's global assessment of functioning ("GAF") score and increased medication dosages.

10

therein do not support Dr. Kirchmann's disability opinion. Further, opinions as to an individual's inability to work are reserved to the ALJ. 20 C.F.R. § 404.1527(d)(1). The inconsistency between the opinion and other medical evidence in the record reasonably downgraded the true evidentiary value of Dr. Kirchmann's disability opinion. Additionally, the ALJ complied with S.S.R. 96-2p by making his decision sufficiently specific for subsequent viewers to understand the weight accorded Dr. Kirchmann's opinion and the reasons for said weight. *See Koonce v. Apfel*, No. 98-1144, 1999 U.S. App. LEXIS 307, at *7, 1999 WL 7864, at *2 (4th Cir. Jan. 11, 1999) ("An ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies or has not given good reason for the weight afforded a particular opinion.") (internal citations and quotations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (explaining there "is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision"). Accordingly, the ALJ was within his discretion in not assigning controlling weight to Dr. Kirchmann's opinion.

## II. The ALJ's RFC assessment is supported by substantial evidence.

Claimant contends the ALJ's finding that Claimant is capable of performing medium work is unsupported by the record and the ALJ's findings are "based on a selective recall of the evidence." Pl.'s Mem. at 8. This court disagrees.

An individual's RFC is defined as that capacity which an individual possesses despite the limitations caused by his physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); *see also* S.S.R. 96-8p, 1996 SSR LEXIS 5, at *2, 1996 WL 374184, at *1. The RFC assessment is based on all the relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); *see also*

11

S.S.R. 96-8p, 1996 SSR LEXIS 5, at *13-14, 1996 WL 374184, at *5. When a claimant has a number of impairments, including those deemed not severe, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) (citations omitted) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments."). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-8p, 1996 SSR LEXIS 5, at *20, 1996 WL 374184, at *7.

The ALJ's decision indicates that he considered Claimant's mental and physical impairments in totality before determining Claimant maintained the RFC to perform medium work. As mentioned, the ALJ's opinion provides a review of Claimant's medical records. In addition, the RFC assessment takes account of Claimant's testimony concerning urinary urgency and incontinence and PTSD symptoms to the extent that this testimony proved consistent with the objective medical evidence before the ALJ. *See Hines v. Barnhart*, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting the ALJ need not accept Claimant's subjective evidence to the extent it is inconsistent with the available evidence). Moreover, the ALJ considered the opinion evidence rendered by treating and non-treating sources and state agency consultants and explained his rationale for the weight accorded this evidence. With respect to the treating source opinion of Dr. Kirchmann, the ALJ noted that this opinion is inconsistent with his own treatment notes and the record as a whole. The ALJ accorded significant weight, however, to the opinions of state agency consultants and his decision is supported by substantial evidence.

12

With respect to Claimant's physical impairments, the ALJ discussed follow-up reports from 2007, 2008 and 2009 related to Claimant's prostate cancer. These reports noted that Claimant's PSA levels were stable, there was no evidence of cancer recurrence or metastatic disease and even the slight elevation in 2007 was consistent with baseline variation. (R. 22, 23, 193, 221, 222). Additionally, Claimant reported stable urinary urgency in 2007 and his urge continence was well controlled with tamsulosin. (R. 22, 23, 217, 221). As for Claimant's arthritis, the ALJ discussed an August 2008 report wherein an x-ray of Claimant's shoulder showed minimal degenerative changes at the AC joint with no acute fracture or dislocation and no recommendation of surgery was given. (R. 23, 225, 310, 312). Claimant was diagnosed with a rotator cuff tear. (R. 23, 312). The ALJ discussed Claimant's sleep apnea wherein reports consistently indicated that Claimant was not using his CPAP machine or his use was below prescribed levels. (R. 22, 271, 203, 205, 206, 209, 193). A state agency RFC report completed by Dr. Kumar concluded that Claimant is capable of medium work with certain restrictions. (R. 23, 245-252). The ALJ's RFC assessment incorporates Dr. Kumar's medium work finding with restrictions. (R. 21, 23, 24). The ALJ noted his finding of medium work was also supported by Claimant's testimony regarding daily activities and the conservative and routine treatment Claimant has received. (R. 23).

With respect to Claimant's mental limitations, the ALJ discussed a February 2009 report completed by a non-examining state agency psychologist, Nancy Lloyd, P.h.D., which concluded there was insufficient evidence to establish any mental functional limitations despite the recognition that depressive disorder and PTSD were present in Claimant. (R. 24, 241). Additionally, the report noted that there is no evidence addressing attention span or memory issues. (R. 243). The ALJ noted that newly submitted evidence shows Claimant's limitations are now greater than what was

13

reported in the mental capacity assessment. (R. 24). Accordingly, the ALJ's RFC assessment took account of increased limitations when he included the limitations of simple, routine, repetitive tasks and no more than occasional interaction with co-workers and supervisors and no contact with the public. (R. 21). The ALJ thus considered Claimant's testimony of avoiding contact with people and having concentration issues. (R. 22, 41, 42). However, the Claimant cites to no evidence in the record to suggest additional or more severe mental functional limitations exist. The ALJ again noted his finding of medium work was also supported by Claimant's testimony regarding daily activities and the conservative and routine treatment Claimant has received. (R. 23).

Based on the foregoing, this court finds that the ALJ's RFC determination is supported by substantial evidence. The ALJ analyzed all of the relevant evidence, sufficiently explained his findings and applied the correct legal standards in evaluating Claimant's RFC. Accordingly, Claimant's argument as to this issue is without merit.

### III. The ALJ's consideration of the VA's disability decision was proper.

Claimant contends the VA disability rating was entitled to "great weight" and the ALJ did not consider the VA's disability decision as required by SSR 06-03p. Pl.'s Mem. at 15-16. This court disagrees.

Although 20 C.F.R. § 404.1504 provides that a disability determination made by another governmental or non-governmental agency is not binding on the Commissioner, SSR 06-03p clearly states that "evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered." S.S.R. 06-03p, 2006 SSR LEXIS 5, at *17, 2006 WL 2329939, at *6; *see also* 20 C.F.R. § 404.1512(b)(5); *see Watson v. Astrue*, No. 5:08-CV-553-FL, 2009 U.S. Dist. LEXIS 68833, at *4-5, 2009 WL 2423967, at *3 (E.D.N.C. Aug. 6, 2009). The

14

regulations cite "the Department of Veterans Affairs" as an example of an agency whose determination should be considered. S.S.R. 06-03p, 2006 SSR LEXIS 5, at *16, 2006 WL 2329939, at *6; *see Winston v. Astrue*, No. 4:11-CV-1-FL, 2011 U.S. Dist. LEXIS 151348, at *10-11, 2011 WL 7024959, at *4 (E.D.N.C. Dec. 9, 2011), *aff'd and adopted*, 2012 U.S. Dist. LEXIS 4012, 2012 WL 112599 (E.D.N.C. Jan. 12, 2012).

In a decision dated January 22, 2007, the VA determined Claimant had a 70 percent service connected disability rating, due to PTSD, however, Claimant was compensated as being 100 percent disabled effective June 20, 2006. (R. 175-76). Although the VA determination was not binding on the ALJ, the record reflects that the ALJ did not completely exclude it from consideration. Indeed, after acknowledging the VA decision, the ALJ stated as follows:

> [T]he award of disability benefits through the employer or another agency is not dispositive of the issue of disability in the current social security proceeding; and is an ultimate issue to be determined by the Social Security Administration. The undersigned, however, has considered the award of veterans disability benefits in formulating the claimant's residual functional capacity.

(R. 24).

The VA decision assigned disability to Claimant based on his PTSD and no other medical conditions. (R. 176). In considering Claimant's RFC, the ALJ gave full consideration to the medical records from the Durham, North Carolina Veterans Administration Medical Center ("VAMC"). (R. 21-24). First, the ALJ considered the treatment records for the group therapy sessions led by a social worker which were held at least bi-weekly with frequent attendance by Claimant between April 2007 and March 2010. (R. 185-190, 224, 406). Next, the ALJ discussed the Claimant's treatment by the VAMC for PTSD and noted Claimant's symptoms were fairly controlled with medication and there were lapses in medication and scheduled psychiatrist visits. (R. 22). The ALJ noted that treatment

notes with a VAMC psychiatrist revealed no psychomotor agitation, no delusions, and logical and linear thoughts. (R. 22, 204). Additionally, the ALJ noted treatment records from a VAMC social worker showed Claimant had a global assessment of functioning ("GAF") score of 45, yet Claimant was found at low risk for harming himself or others. (R. 22, 200).

Claimant does not explain how the VA disability decision supports a different RFC conclusion. As Defendant notes, the VA's disability decision cites no medical records. Def.'s Mem. Supp. Def.'s Mot. J. On Pleadings ("Def.'s Mem.") at 19; (R. 175-76, 255). Rather, it is essentially a form opinion, unaccompanied by any written report. The remaining information contained therein concerns the processing and timing of disability payments. (R. 175-76). Thus, it is unclear what further consideration was warranted of the VA decision. Nevertheless, the court finds that the ALJ gave appropriate consideration to the VAMC treatment records during the relevant time period, and based on those records, along with the ALJ's acknowledgment of the VA disability rating, is satisfied that the ALJ gave proper consideration to the VA's disability decision. *See Cobb-Leonard v. Astrue*, No. 3:10-CV-449-MOC-DCK, 2011 U.S. Dist. LEXIS 111717, at *11-12, 2011 WL 4498876, at *4-5 (W.D.N.C. Sept. 8, 2011) (finding the ALJ's acknowledgment of the VA's disability determination and observation that the VA's disability guidelines differ from those employed by the SSA, coupled with the ALJ's consideration of records from the VAMC, was sufficient consideration), *adopted*, 2011 U.S. Dist. LEXIS 111710, 2011 WL 4498864 (W.D.N.C. Sept. 27, 2011); *Hargro v. Astrue*, No. 1:09-CV-19, 2010 U.S. Dist. LEXIS 30823, at *35, 2010 WL 1380144, at *11 (S.D. W. Va. Mar. 30, 2010) (holding the ALJ properly considered the VA decision where he "noted the [VA's] disability ratings and awards in his decision"); *see Davis v. Astrue*, No. 7:10–CV–231–D, 2012 U.S. Dist. LEXIS 20899, at *13, 2012 WL 555782, at *5 (E.D.N.C. Jan. 5, 2012) ("In the present case,

16

the ALJ not only failed to explain the consideration given, but completely failed to even acknowledge the NCDHHS decision. In such cases, this Court has determined that remand is necessary to allow the ALJ to consider the NCDHHS decision and explain its consideration in the ALJ's analysis."), *aff'd and adopted*, 2012 U.S. Dist. LEXIS 20898, 2012 WL 555304 (E.D.N.C. Feb. 17, 2012); *Walton v. Astrue*, No. 7:09-CV-112-D, 2010 U.S. Dist. LEXIS 68265, at *2, 2010 WL 2772498, at *1 (E.D.N.C. Jul. 9, 2010) (remanding for further consideration where "the ALJ said nothing [regarding the NCDHHS decision], and SSR 06-3p requires more than 'nothing' "); *Bridgeman v. Astrue*, No. 4:07-CV-81-D, 2008 U.S. Dist. LEXIS 123661, at *1-2, 2008 WL 1803619, at *1, *10 (E.D.N.C. Mar. 14, 2008) (remanding for further explanation where ALJ mentioned Medicaid ruling, but dismissed its relevance without discussion). Accordingly, Claimant's assignment of error is without merit.

## CONCLUSION

For the reasons stated above, this court RECOMMENDS Claimant's Motion for Judgment on the Pleadings [DE-20] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-24] be GRANTED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

Submitted, this the 27th day of December, 2012.

*Robert Jones*
Robert B. Jones, Jr.
United States Magistrate Judge

18